LAMAR, Justice,
for the Court:
¶ 1. This case presents a certified question from the Fifth Circuit Court of Appeals. Robert Swindol sued his employer, Aurora Flight Sciences Corporation, in federal court for wrongful discharge and defamation. Swindol alleged that Aurora had terminated him for having a firearm inside his locked vehicle in the company parking lot. Aurora filed a motion to dismiss, and the district court dismissed Swindol’s wrongful-discharge claim with prejudice,[1] stating that it “[could not] say *848 that the Mississippi Supreme Court would recognize a third exception to the doctrine of at-will employment,” as proposed by Swindol. As such, the district court found that Swindol had failed to state a claim for wrongful discharge. Swindol appealed, and the Fifth Circuit has now certified the following question to this Court:
Whether in Mississippi an employer may be liable for a wrongful discharge of an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with [Mississippi Code] Section 45-9-55.
Swindol v. Aurora Flight Sciences Corp., 805 F.3d 516, 523 (5th Cir.2015). The Fifth Circuit also concluded that it “would benefit from [this Court’s] analysis of whether Section 45-9-55(5) bars” Swin-dol’s suit. Id. at 522. We find that an employer may be liable and that Section 45-9-55(5) does not shield Aurora from liability under the facts of this case.
PACTS AND PROCEDURAL HISTORY
¶2. The Fifth Circuit summarized the facts as follows:
Swindol worked for Aurora Flight Sciences Corporation in Mississippi. He parked his car in Aurora’s parking lot with a firearm locked inside. Aurora’s managers learned about the firearm and fired Swindol later the same day for violating a company policy forbidding firearms on company property. Aurora then convened a plant-wide meeting during which its human resources manager told employees that Swindol was a security risk and instructed them to call the police if they saw him near the facility. Swindol sued Aurora in United States District Court in Mississippi. He asserted there was diversity jurisdiction under 28 U.S.C. § 1332. He brought state-law claims for wrongful discharge and defamation. Aurora moved to dismiss Swindol’s complaint under Rule 12(b)(6). The district court granted the motion, dismissing Swindol’s wrongful discharge claim with prejudice and his defamation claim without prejudice. Swindol appealed.
Id. at 520 (footnote omitted).
¶ 3. The Fifth Circuit began its discussion by noting Mississippi Code Section 45-9-55(1), which provides:
(1) Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a. locked vehicle in any parking lot, parking garage, or other designated parking area.
Miss.Code Ann. § 45-9-55(1) (Rev.2015). The cross-referenced subsection (2) provides a different rule for certain secured parking lots, but neither party claims that rule applies here.- Swindol, 805 F.3d at 521. It also is “undisputed that Aurora had a firearms policy that is inconsistent with [Section 45-9-55].” Id.
¶ 4. Swindol argued before the Fifth Circuit that it “should interpret Section 45-9-55 to create a ‘separate and additional public policy exception to the at-will doctrine’ because doing so would fortify Mississippi’s public policy supporting the right to bear arms,” Id. But the Fifth Circuit ultimately declined to do so, noting that it had “discovered no Mississippi case law addressing the effect of Section 45-9-55.”[2] Id. The. Court went on to say that
*849 It is undisputed that Aurora had a firearms policy that is inconsistent .with the statute. Those facts still leave as questions - whether the firing violated the statute and whether it can be remedied in this action despite the employment-at-,will doctrine. We hesitate to intrude into such a seemingly well-settled, area of state law. As the Mississippi Supreme Court has held, employment at will means employers may fire employees “for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.” McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603, 606 (Miss.1993) (citation and quotations omitted). The two exceptions to the Mississippi employment-at-will doctrine identified by the McAm court over 20 years ago remain the only two recognized so far. Neither McAm exception applies here. See id. at 607.
Though the Mississippi Supreme Court has not expanded the exceptions after McAm, the court has been clear that the legislature has the authority to create new exceptions. See, e.g., Kelly v. Miss. Valley Gas Co., 397 So.2d 874, 876 (Miss.1981). In Kelly, 'the court held that the employment-at-will doctrine barred the plaintiffs ‘claims for retaliatory discharge based ón his employer’s firing him for exercising his statutory right to file a workmen’s compensation claim. Id. The: Kelly court based' its decision largely on the lack of a statutory provision expressly making it a crime for an employer to discharge an employee for filing such a claim. Id. The Mississippi statute here, though, goes beyond just giving rights to employees. It is express that an employer may not enforce a policy prohibiting employees from having weapons in their locked vehicles. See § [46-9-55]. The issue as we see it is whether that prohibition is sufficient to create an exception to the Mississippi ■ employment-at-will doctrine.
Id. at 521-22/ The Fifth Circuit decided also that' it would “benefit from [this Court’s] analysis of whether Section 45-9-55(5) bars this'suit.” Id. at 522. Section 45-9-55(5) provides:
(5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.
Miss,Code Ann. § 45-9-55(5) (Rev.2015).
¶ 5. So, the Fifth Circuit concluded,
Section 45-9-55 clearly expresses a public policy prohibiting employers from barring employees from possessing firearms in the manner the plaintiff claims • he did. Yet there'are no state-law authorities to guide us in deciding how this statute affects the employment-at-will doctrine. Mississippi state courts have not identified any exceptions to the doctrine beyond those in McAm. That consistency raises compelling comity interests that -stay our hand from adding an exception in federal court even were we to decide an exception had been statutorily created. , The Mississippi .Supreme Court is the only court that can definitively decide whether the well-settled M.cAm doctrine has been affected by Section 45-9-55.
Swindol, 805 F.3d at 522. The certified question quoted above followed.
. ANALYSIS

Employment-At-Will Jurisprudence in Mississippi

¶ 6. Mississippi has followed the common-law rule of at-will employment for more than 150 years. Kelly v. Mississippi Valley Gas Co., 397 So.2d 874, 874-75 *850 (Miss.1981). See also Butler v. Smith and Tharpe, 35 Miss. 457 (1858). In short, either party may terminate the employment at will, and the parties “may have a good reason, a wrong reason, or no reason for terminating the employment contract.” Kelly, 397 So.2d at 874-75. Stated more broadly, “ ‘absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer’s will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.’” McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603, 606 (Miss.1993) (quoting Shaw v. Burchfield, 481 So.2d 247 (Miss.1985)).
¶ 7. In Kelly v. Mississippi Valley Gas Co., Plaintiff J.C. Kelly
[urged the Court] to adopt a public policy exception to the common law rule that an employment contract at will may be terminated by either party with or without cause or justification, and hold an employer liable to an employee in a common law tort action when an employer has discharged an employee for filing a workmen’s compensation claim.
Kelly, 397 So.2d at 874. But this Court declined to carve out a “public policy exception” to the employment-at-will rule, noting
While the harshness of the terminable at will rule is subject to exception in light of express legislative action, the absence of explicit statutory provision of a civil remedy in the Mississippi workmen’s compensation statute argues against recognizing a cause of action for retaliatory discharge.
Id. at 875 (quoting Green v. Amerada-Hess Corp., 612 F.2d 212, 214 (5th Cir. 1980)) (citations omitted). This Court said that, while Kelly’s arguments had “considerable appeal,” they were “clearly for the Legislature to assess, not the judiciary.” Kelly, 397 So.2d at 876. This Court noted the lack of a retaliatory-discharge provision in Mississippi’s Workmen’s Compensation Law, as well as the lack of a provision making it a crime for an employer to discharge an employee for filing a claim. Id. As such, this Court concluded that it would be “engraft[ing] on the law an exception different from that expressed by the Legislature,” which was not its function. Id.
¶ 8. The United States District Court for the Northern District of Mississippi addressed Mississippi’s employment-at-will jurisprudence a few years later in Laws v. Aetna Finance Company, ITT, 667 F.Supp. 342 (N.D.Miss.1987). The plaintiff there alleged that his employer fired him after he refused to participate in illegal loan “packing.” Id. at 343-44. The district court recognized that Mississippi “clearly” was an employment-at-will state. Id. at 344. But the court also opined that “the Mississippi Supreme Court has not previously decided a case applicable or similar to the case sub judice.” Id. The district court thus proceeded to make an Erie[3] guess, concluding that “the Mississippi Supreme Court would recognize a limited public policy exception to the employment-at-will rule where an employee alleges that his discharge was motivated by a refusal to engage in illegal acts for his employer.” Id. at 348-49.
¶ 9. In coming to this conclusion, the district court wrote
The focal point of the defendants’ argument, then, is that even when at-will employees are discharged for refusing to engage in unlawful practices harmful to the public, not simply for exercising statutory rights given to them as em *851 ployees as in Kelly, the courts are powerless to fashion any relief at common law. The defendants’ argument can be further reduced to the contention that under Mississippi’s law there can never be a modification of the employment-at-will rule unless it is made by the Legislature. This argument completely ignores the fact, however, that the employment-at-will rule itself was created and clarified by the Mississippi Supreme Court in Butler and Rape, supra, and merely applied to the workers’ compensation law in Kelly.
The Mississippi court has already’stated in dicta that it is prepared to reconsider Mississippi’s common law employment-at-will rule and to vary from its previous unswerving adherence to the harsh rule adopted in Kelly when the appropriate ease is presented.
The prevailing rule on employment at will appears to be that where. a clear ' mandate of public policy' is violated by an employee’s discharge, a cause of action for wrongful termination does arise. The court finds no contrary evidence that Mississippi would reject the opportunity presented in this case to adopt a narrow public policy exception to the termination at will doctrine, given a factual situation in which an at-will employee is discharged for refusing to commit unlawful acts for his,employer-.
Id. at 346-48 (footnotes and citations omitted).
¶ 10. And in distinguishing Kelly, the district court noted that Kelly
simply reflected judicial unwillingness to tamper with a detailed statutory scheme that regulated one aspect of the employer-employee relationship.... The instant case presents no problem of en-grafting an exception onto any existing statutory law, since -the terminable at will doctrine.is a judicially created one and can thus be modified by the judiciary.
Id. at 345. The district court also noted that “the public policies underlying Laws’ discharge are not contained in any statutory scheme as to which there was any basis for assuming that either Congress or the Mississippi Legislature would have contemplated the need for an anti-retaliation provision.” Id.
■ ¶ 11. Six years later, in McArn v. Allied Bruce-Terminix Co., Inc., this Court adopted the limited public-policy exception predicted by the district court in Laws. McArn alleged that his employer had fired him after- he reported its illegal acts. McArn, 626 So.2d at 606. In reversing the trial court’s directed verdict in favor of the employer, this Court wrote . .
We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and this should be so whether there is a written contract or not: (1) an employee who refuses to participate in an illegal, act as. in Laws shall not be-barred by the common law' rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who- is discharged for., reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer. To this limited extent this Court declares these public policy exceptions to the age old common law rule of employment at will.
Id. at 607. The McArn Court also reiterated that an employer may fire an employee for any reason, “excepting only reasons independently declared legally impermissible.” Id. at 606.
*852 ¶ 12. This Court’s most recent pronouncement on the employment-at-will doctrine came last year in Galle v. Isle of Capri Casinos, Inc., 180 So.3d 619 (Miss. 2015). This Court reiterated that, absent a written contract, an employment relationship in Mississippi is at-will. Id. at 622. This Court also noted that it recently had “clarified that ‘[a] McArk claim alleging wrongful discharge in violation of public policy is based on an employer’s duty not to thwart the public interest by terminating employees for speaking the truth.’ ” Id. (quoting Cmty. Care Ctr. of Aberdeen v. Barrentine, 160 So.3d 216, 220 (Miss. 2015)).
¶ 13. But this Court declined to extend the McAm public-policy exception to Galle, because Galle was a “willing participant” in his employer’s illegal conduct:
We find ho public-policy reason to allow an employee who willingly participated in an illegal scheme and who blew the whistle only after the illegal scheme was revealed, to claim the McAm exceptions to the employment-at-will doetrine. Because Galle is an at-will employee and because his claim does not fall within McAm’s narrow public-policy exceptions to-the employment-at-will'doctrine, Galle has failed to state a legally cognizable claim for wrongful- discharge in violation of public policy.
Absent the narrow public-policy exceptions announced in McAm or prohibitions contained in federal or state law, an employer may fire an at-will- employee for any reason or no reason at all.
Galle, 180 So.3d at 623 (emphasis added).
¶ 14. Review of these cases reveals that, though this Court zealously applies the employment-at-will doctrine, that doctrine is not absolute. Employers m'ay not Are employees for one of the public-policy reasons detailed in .McAm, nor may they fire employees for reasons “independently declared legally impermissible.” “ ‘[Ajbsent an employment contract expressly providing to the contrary, an employee may be discharged at the employer’s will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.’ ” McArn, 626 So.2d at 606 (quoting Shaw v. Burchfield, 481 So.2d 247 (Miss.1985)) (emphasis added). “[TJhe harshness of the terminable at will rule is subject to exception in light of express legislative action .... ” Kelly, 397 So.2d at 875 (quoting Green v. Amerada-Hess Corp., 612 F.2d 212 (5th Cir.1980)) (citations omitted) (emphasis added).
¶ 15. “We are of the opinion, that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine....” McArn, 626 So.2d at 607 (emphasis added). “It is an employer’s duty not to thwart the public interest by terminating employees_” Galle, 180 So.3d at 622 (quoting Cmty. Care Ctr. of Aberdeen v. Barrentine, 160 So.3d 216, 220 (Miss.2015)) (emphasis added). “Absent the narrow public-policy exceptions announced in McAm or prohibitions contained in federal or state law, an employer may fire an at-will employee for any reason or no reason at all.” Galle, 180 So.3d at 623 (emphasis added).
¶ 16. Both the parties and the district court framed the issue as whether this Court should judicially-graft another “exception” to the employment-at-will doctrine. But we need take no such action here, because the Legislature already has. In short, we find that “express legislative action” and “state law prohibitions” exist in . this case. Stated differently, we find that the Legislature has declared it “legally impermissible” for an employer to terminate an employee for having a firearm *853 inside his locked vehicle on company property.[4]

Mississippi Law Regarding Firearms

¶ 17. Article 3, Section 12 of the Mississippi Constitution is entitled “Right to Bear Arms” and provides that
The right of every citizen to keep and ■ bear arms in defense of his home, person, or property, or in aid of the- civil power when thereto legally summoned, -shall not be called in question, but the Legislature may regulate or forbid carrying concealed weapons.
Miss. Const, art. 3, § 12 (emphasis added). And Section 97-37-1(2) of the Mississippi Code provides that
(2) It shall not be a violation of this section [the concealment of a deadly weapon statute] for any person over the age of eighteen (18) years to carry a firearm or deadly weapon concealed within the confines of his own home or his place of business, or-any real property associated with his home or business or within any motor vehicle.
Miss. Code Ann. § 97-37-1(2) (Rev.2014) (emphasis added).
¶ 18. Finally relevant here is Section 45-9-55 of the Mississippi Code, which we quote in its entirety:
(1) Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maihtaiú, or enforce any policy or rule that has the efféct of prohibiting a person from transporting or storing a firearm in a locked vehicle in' any parking lot, parking garage, or other designated parking area.
(2) A private employer may prohibit an employee from transporting or storing a firearm in a . vehicle in a parking lot, parking garage,.or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.
(3) This section shall not apply to vehicles owned or leased by an employer and used by the employee in thé course of his-business. 1
(4) This section does not authorize a person' to' transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal law.
(5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.
Miss.Code Ann. § 45-9-55 (Rev.2015) (emphasis added).
¶ 19. So in short, the Mississippi Constitution grants citizens the right to keep and bear arms, and it provides that that right “shall not be called in question.” Miss. Const, art. 3, § 12. Section 97-37-1(2) specifically declares that the act of carrying a firearm within a motor vehicle is not a crime under the concealed-carry law. And Section 45-9-55 specifically precludes employers from “establish[ing], maintain[ing], or 'enforcing] any policy or rule that has the effect of prohibiting a *854 person from transporting or storing a firearm in a locked vehicle.... ”
¶20. We find that these three provisions establish the “express legislative action” and the “state law prohibitions” envisioned by this Court in Kelly and McAm. And, as this Court also wrote in McAm, “an employee may be discharged at the employer’s will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.’ ” McArn, 626 So.2d at 606 (quoting Shaw, 481 So.2d 247) (emphasis added). The Legislature has “independently declared” via Section 46-9-55 that terminating an employee for having a firearm inside his locked vehicle is “legally impermissible.” As Swindol succinctly argued before the district court: “an employee is wrongfully discharged if terminated for an act specifically allowed by Mississippi law, the prohibition of which is specifically disallowed by .,. statutory law.”

Subsection (5) Does Not Shield Aurora From Liability.

¶21. Aurora argued before the Fifth Circuit that Section 45-9-55(5) “contains an explicit bar” prohibiting a civil action for damages under these facts. Specifically, Aurora argued that Section 45-9-55 “contains a sweeping, explicit bar to civil actions for damages against employers,” and that Swindol’s suit “falls squarely within this prohibition.” We disagree.
¶ 22. As quoted above, Section 45-9-55(5) provides
(5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.
Miss.Code Ann. § 45-9-55(5) (Rev.2015) (emphasis added). We find first that this subsection plainly establishes freedom from liability for the actions of employees or third parties. In other words, while the Legislature said in Subsection (1) that employers could not enforce policies or rules that “had the effect” of prohibiting a person from having a firearm in a locked vehicle, it also chose to grant employers immunity should some sort of “occurrence” result from that prohibition.[5]
¶ 23. Moreover, while we recognize that Subsection (5) contains broad language, we find that to interpret it as Aurora does would render Subsection (1) meaningless. And this Court previously has stated unequivocally that “[a]ll parts of a statute are to be given effect if possible.” Miss. Pub. Serv. Comm’n v. City of Jackson, 328 So.2d 656, 658 (Miss.1976). Further, this Court repeatedly has said that “[t]raditional statutory construction ‘requires that a statute receive such construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object.’” Legislature of State v. Shipman, 170 So.3d 1211, 1217 (Miss.2015) (quoting Owens Corning v. Miss. Ins. Guar. Ass’n, 947 So.2d 944, 946 (Miss.2007)) (emphasis added). We do not see any “harmony” in an interpretation finding that the Legislature, on the one hand, specifically precluded employers from prohibiting firearms inside locked vehicles on their premises, but then, on the other hand, granted employers complete immunity from damages for any violation of that prohibition. Nor would that inter *855 pretation be consistent "with the “scope and object” of the statute as a whole. In short, we find that Subsection (5) provides Aurora no protection under the facts of this case.
CONCLUSION
¶ 24. While Mississippi is an at-will employment state, that doctrine is not absolute. This Court repeatedly has stated that the doctrine must yield to express legislative action and/or prohibitions found in federal or state-law.' We find that such “express legislative action” and “state law prohibitions” exist here. We also find that Subsection (5) does not protect Aurora from liability under the facts of this case. As such, we answer the certified question affirmatively.
¶ 25. CERTIFIED QUESTION ANSWERED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.

. The district court dismissed Swindol’s defamation claim without prejudice for failure to make sufficient allegations as required by Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and the Fifth Circuit said in its order that it "need not review [that] dismissal prior to the Mississippi Supreme Court’s response to this certifica *848 tion.” Swindol v. Aurora Flight Sciences Corp., 805 F.3d 516, 520 n. 3 (5th Cir.2015). So the defamation claim is not before this Court.

. And neither have we.

. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. We are asked today to determine whether an employer may be liable for terminating an employee who stored a firearm "in a manner that is consistent. with Section 45-9-55.” Swindol, 805 F.3d at 523. We note, however, that Section 45-9-55(4) provides that "[tjhis' section does not authorize a person to transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal.law,” Miss.Code Ann. § 45-9-55(4) (Rev.2015), So our opinion here should not be read to address a situation in ■ which possession of a firearm in a certain location is prohibited by law.

. It is trae, as Aurora points out, that another panel of the Fifth Circuit (in an unpublished, per curiam opinion) has agreed with its position and has held that Subsection (5) bars suits like Swindol's. See Parker v. Leaf River Cellulose, LLC, 621 Fed. App'x 271 (5th Cir. 2015). But that case is not binding on this Court, and Parker’s mandate has been "held” pending this Court's response to this certification. Swindol, 805 F.3d at 522.